UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOSEPH RUDOLPH LEINWEBER, JR., and JANICE MARIE LEINWEBER, <br><br> Plaintiffs, <br><br> V. <br><br> BANK OF AMERICA, N.A, *et al.* <br><br> Defendants. | ) ) ) ) ) ) No. 3:12-CV-84 ) (VARLAN/GUYTON) ) ) ) ) ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the order of the District Judge [Doc. 11, 20] referring Plaintiff's Motion for Temporary Injunction [Doc. 2], Defendant Rubin Lublin Suarez Serrano, LLC's Motion to Dismiss Plaintiffs' Complaint [Doc. 8], and Motion to Dismiss filed by Defendants Bank of America N.A., Bank of New York Mellon, and Mortgage Electronic Registration System, Inc. [Doc. 17], to the undersigned for disposition or report and recommendation as may be appropriate.

These motions are now ripe for adjudication, and for the reasons stated below, the undersigned **RECOMMENDS** that: the Plaintiffs' Motion for Temporary Injunction [Doc. 2] be **DENIED**; Defendant Rubin Lublin Suarez Serrano, LLC's Motion to Dismiss Plaintiffs' Complaint [Doc. 8] be **GRANTED**; and Motion to Dismiss filed by Defendants Bank of America N.A., Bank of New York Mellon, and Mortgage Electronic Registration System, Inc. [Doc. 17] be **GRANTED.**

## I. BACKGROUND

The Plaintiffs executed a note and deed of trust on February 5, 2007, refinancing their home, commonly known as 2606 Kings Point Road, Knoxville, Tennessee ("the Property"). [Doc. 1 at ¶¶ 1, 6]. On or about April 23, 2007, the servicing of the loan on the Property was transferred to Countrywide Home Loans. [Doc. 1 at ¶ 7].

Plaintiffs state that on or about February 1, 2010, the website they used to make payments on their loans had been transferred from a Countrywide website to a Bank of America website.[1] [Doc. 1 at ¶ 10]. The Plaintiffs state that they received a "welcome packet" from Bank of America in March 2010, and on or about April 2, 2010, they received a letter stating Bank of America's intent to accelerate the loan based upon its being in default. [Doc. 1 at ¶ 14].

The Plaintiffs allege that Mr. Leinweber began campaigning for a seat in the United States House of Representatives around the same time, and their financial situation deteriorated. [Doc. 1 at ¶ 18]. The Plaintiffs state that they applied for, and received, approval to enter into the Homeowners Affordable Modification Program ("HAMP") on or about September 2, 2010. [Doc. 1 at ¶ 23]. The Plaintiffs allege that they made payments on their loan for October 2010, November 2010, and December 2010. [Doc. 1 at ¶ 23].

Plaintiffs state that on January 3, 2011, they rejected the HAMP modification offer and requested that Bank of America produce a current promissory note, deed of trust, and evidence of what entity was owed the balance of their loan. [Doc. 1 at ¶ 32]. The Plaintiffs state that they also sent a letter to the Chief Executive Officer of Bank of America requesting the same

---

[1] The court takes judicial notice that on July 1, 2008, Bank of America, N.A., acquired Countrywide Home Loans Servicing, LP as part of its purchase of Countrywide Financial Corporation. See Maixner v. BAC Home Loans Servicing, LP, 2011 WL 7153929, 2 (D.Or., 2011)

2

Case 3:12-cv-00084-TAV-HBG   Document 24   Filed 04/18/12   Page 2 of 15   PageID #: 342

information. [Doc. 1 at ¶ 33]. The Plaintiffs take issue with the manner in which these payments were applied to their loan during this period. [Doc. 1 at ¶¶ 34, 37, 38].

The Plaintiffs continued to seek this information and make demands on the financial entities involved in both the origination of the loan and the servicing of the loan in the Spring of 2011. [Doc. 1 at ¶¶ 39-42]. The Plaintiffs and Bank of America exchanged various correspondence relating to a loan modification and the Plaintiffs' requests for information. [Doc. 1 at ¶¶ 44-49]. The Plaintiffs felt they were never given satisfactory information identifying the entity to whom they were indebted, and on or about July 9, 2011, they state that they refused to apply for a short-sale program. [Doc. 1 at ¶ 54].

On September 29, 2011, the Plaintiffs received a Notice of Right to Foreclosure, stating, "You should IMMEDIATELY contact the lender, servicer, or creditor listed below to discuss repayment options for which you may qualify, or if none are available, other foreclosure alternatives such as short sale or deed in lieu of foreclosure." [Doc. 1-4 at 31]. The Notice explained, "Failure to satisfy your payment obligations may result in the loss of your home." [Doc. 1-4 at 31]. The Plaintiffs detail their attempts to correspond with the Defendants thereafter [Doc. 1 at ¶¶ 60-70]; however, the parties were unable to reach an agreement to resolve the Plaintiffs' default. Plaintiffs allege that on December 5, 2011, they received a written notice of assignment of the servicing of their loan to Specialized Loan Servicing LLC. [Doc. 1 at ¶ 66].

A foreclosure sale was allegedly scheduled and cancelled in January 2012. [Doc. 1 at ¶ 70-79]. The Plaintiffs allege that in January 2012, they also received correspondence introducing Specialized Loan Servicing as a new servicer for their loan. [Doc. 1 at ¶¶ 68, 80].

The Plaintiffs filed this suit on February 21, 2012.

## II. POSITIONS OF THE PARTIES

The Plaintiffs make no specific claims for relief. They have, instead, included the following, general statements/requests:

> This suit accuses the Defendants and co-Defendants of false, misleading, fraudulent and untruthful documents in an attempt to intimidate, coerce and forfeit the Plaintiffs of their rights as property owners and circumvent Due Process. Defendants are in violation of FDIC Law, Regulations, Related Acts, 6500 – Consumer Protection, Part 3500 REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974; Section 3500.21 Mortgage servicing transfers, Qualified written request means a written correspondence from the borrower to the servicer prepared in accordance with paragraph (e)(2) of this section. Section 2605 of Title 12 of the United States Code to seek statutory damages for each violation of any part of Section 2605. Section 1641 (f)(2) of the Truth in Lending Act [and] SEC Form 8k and the Prospectus Supplement, SEC Form 424b5.
>
> . . . .
>
> It is the opinion of the Plaintiffs that the Defendants listed in this suit have attempted to circumvent existing Federal and State Statutes, intimidate and coerce the Plaintiffs to leave their home through a process of questionable transactions akin to a "shell game" using local County Recording offices as an unwilling co-conspirator. The actions of the Defendants are not an isolated case and is [sic] part of a nationwide epidemic of fraud being perpetrated on American property owners that has the attention of the Attorney Generals in every state. . . . . The Plaintiffs are in full realization that they owe money on their home, and without question accept that responsibility, the Plaintiffs only ask, as it is their right, WHO DO WE OWE IT TO and WHO HAS THE PROMISSORY NOTE, A VALID DOCUMENT SIGNED IN BLACK OR BLUE INK ORIGINAL OF THAT NOTE?
>
> Plaintiffs . . . in no way shape or form file this suit to remove their responsibility for the legitimate debt they incurred. We only ask that the court allow us our right to "due process" in addressing the facts of this case.
>
> Plaintiffs further stipulate that in the event the court rules that the laws implied herein have been violated by the Defendants and reasonable punitive damages are awarded the Plaintiffs will request

4

> the court set aside the amount, from the damages awarded, the amount of legitimate principal balance of $193,000 approximately in trust for one year and that Defendants BoA and BONY Mellon be held responsible to attempt to locate the actual holder of the note informing them to claim what is owed to them with legal and lawful documentation. Plaintiffs further stipulate, at the courts [sic] indulgence, that after a period of one year and no legitimate claim has been made the funds held in trust be released to the Love Kitchen in Knoxville[,] Tennessee in support of the charitable work they do.
>
> Plaintiffs also request that in the event the court rules in favor of the Plaintiffs, the Defendants be given 14 business days to remove any and all names filed against the Deed of Trust in Knox County at the Register of Deeds clearing the Deed of Trust and relinquishing any and all further involvement in the property listed therein.

[Doc. 1 at 18-19]. The Plaintiffs have also filed a Motion for Temporary Injunction [Doc. 2], moving the Court to grant a temporary injunction restraining the defendants, specifically Rubin Lublin Suarez Serrano, LLC, ("Rubin Lublin"), from proceeding with a foreclosure sale.

The Defendants have responded in opposition to the request for a temporary injunction [Doc. 16, 19]. Rubin Lublin has filed a Motion to Dismiss Plaintiffs' Complaint [Doc. 8], and Defendants Bank of America, NA, ("Bank of America"), Bank of New York Mellon ("Mellon"), and the Mortgage Electronic Registration System, Inc., ("MERS") have also filed a Motion to Dismiss [Doc. 17].

All of the motions listed above are ripe for adjudication, and for the reason more fully stated below the undersigned will **RECOMMEND** that: the Motions to Dismiss be **GRANTED** and the Motion for Temporary Restraining Order be **DENIED**.

### III. ANALYSIS

The Court will address the dispositive motions first and then address the Plaintiffs' request for injunctive relief.

### A. Motions to Dismiss

All Defendants move the Court to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[2]

In considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. Eidson v. Tennessee Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). With this standard of review in mind, the Court turns to the Defendants' Motions to Dismiss.

*1. Failure to Respond to the Motions to Dismiss*

Initially, the Court finds that the Plaintiffs have failed to respond to either of the Motions to Dismiss that are before the Court. The Court finds that the time for responding as expired. See E.D. Tenn. L.R. 7.1. This failure to respond may be treated as acquiescence to the relief sought. See E.D. Tenn. L.R. 7.2; see also Campbell v. McMinn County, Tenn., 2012 WL 369090 (E.D. Tenn. 2012) (Curtis, C.J.) ("Plaintiff's failure to respond effectively waives any objections that he may have had on this matter."). The Court finds that the Motions to Dismiss could be granted based upon the Plaintiffs' failure to respond alone. The Court will, nonetheless,

---

[2] Defendants Bank of America, Mellon, and MERS also move the Court to dismiss this case based upon a lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Because the Court has determined that the Defendants' request that the case be dismissed pursuant to Rule 12(b)(6), the Court has not discussed these Defendants' arguments under Rule 12(b)(1).

discuss the additional grounds upon which it makes its recommendation that these matters be dismissed.

*2.  Insufficient Pleadings*

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading for a claim for relief must contain:

> **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

The Supreme Court of the United States has explained the threshold for surviving a motion to dismiss made pursuant to Rules 8 and 12(b)(6), as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127

7

> S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009).

Two principles underlie this standard. First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Id. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.

In this case, the Plaintiffs' legal conclusions and allegations are accompanied by a labyrinth of factual statements that are not correlated to and do not support the legal conclusions reached by the Plaintiffs in their Complaint. Following their exhaustive recitation of the allegedly relevant facts, the Plaintiffs simply assert that "the laws implied herein have been violated by the Defendants." [Doc. 1 at 19].

i. <u>Consumer Credit Protection Act</u>

The Court finds that the Plaintiffs have failed to state a claim under the Consumer Credit Protection Act, which the Plaintiffs cite as "FDIC Law, Regulations, Related Acts, 6500- Consumer Protection." The Plaintiffs appear to be referencing the Consumer Credit Protection Act, which is composed of numerous subparts including the Truth in Lending Act and the acts discussed below, see Mace v. Van Ru Credit Corp., 109 F.3d 338, 343 (7th Cir. 1997). The Plaintiffs have not specifically cited the Consumer Credit Protection Act or isolated the related

8

acts under which they are proceeding.[3] The complete lack of statutory reference arguably supports finding the Plaintiffs' pleadings to be insufficient

Out of an abundance of caution, the Court has, however, considered the application of the Consumer Credit Protection Act, its components, and related provisions, and the Court finds that the Plaintiffs have not pled a *prima facie* claim under the: Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*., because they have not pled facts indicating the Defendants are consumer reporting agencies; the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*., because they have not pled facts that would demonstrate a violation of §§ 1692b-1692j; or the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq*., because they have not shown that, despite being qualified, they were denied credit by the Defendants.

To the extent the Plaintiffs have intended to present claims under the Consumer Credit Protection Act (other than the Truth in Lending Act, which is discussed below), Fair Credit Reporting Act, the Fair Debt Collection Practices Act, or the Equal Credit Opportunity Act, the Court finds that these claims are not pled in compliance with Rule 8. The undersigned will **RECOMMEND** that these claims be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

ii. Claims Under the Laws of the State of Tennessee

To the extent the Plaintiffs have intended to present claims under the laws of the State of Tennessee, the Court finds that these claims are not pled in compliance with Rule 8. The Court finds that the Plaintiffs have not demonstrated any grounds for vacating any transfers, assignments, or other transactions involving the transfer of servicing or assignment of their Note and Deed of Trust. Moreover, the Court finds that the Plaintiffs have not pled allegations

---

[3] The Plaintiffs do name the Truth in Lending Act and Real Estate Settlements Procedures Act, though they do not cite any specific portion of these statutes and regulations. The Court will address potential claims under these provisions below.

undermining the holder-in-due course status of any holder of the Note executed by the Plaintiffs, see Tenn. Code. Ann. § 47-3-302, nor have they pled a claim to quiet title that satisfies Rule 8. Thus, to the extent the Plaintiffs have attempted to bring claims under the laws of the state of Tennessee, the undersigned will **RECOMMEND** that these claims be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

iii.   Securities and Exchange Commission Filings

The Plaintiffs have briefly alluded to corporate filings made to the Securities and Exchange Commission. The Plaintiffs have not directed the Court to any private right of action related to these filings, and they have not stated facts demonstrating any such claim in this case. They have not met their burden under Rule 8. To the extent the Plaintiffs have attempted to bring claims under the Securities Act of 1933 or any related regulation governing the Securities and Exchange Commission, the undersigned will **RECOMMEND** that these claims be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

3.   *Truth in Lending Act, 15 U.S.C. § 1601* et seq.

With regard to the possible claims asserted under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA"), and Real Estate Settlements Procedures Act, 12 U.S.C. § 2601 *et seq.*, ("RESPA"), the Plaintiffs have at least identified these statutes by their common titles in their pleadings. The Court is mindful of the Plaintiff's status a *pro se* litigants, and therefore, the Court will not dismiss these claims based upon the Complaint's deficiencies under Rule 8.

To the extent the Complaint satisfies Rule 8's minimum pleading requirements for a claim for relief under the TILA, the Court finds that this claim is barred by the statute of limitations. Any action for damages under TILA must be brought within one year of the alleged

violation, see 15 U.S.C. § 1640(e), and a borrower's right to rescission expires three years after the date of consummation of the transaction," 15 U.S.C. § 1635(f);12 C.F.R. § 226.23(a)(3).

The Plaintiffs in this case have not disputed that the loan documents in this case including the Deed of Trust and Note were executed on February 5, 2007. To the contrary, the Plaintiffs appear to concede that they executed the Deed of Trust attached to the Complaint on February 5, 2007. [Doc. 1 at ¶ 6]. The Deed of Trust indicates on its face that the Plaintiffs executed it on February 5, 2007. [Doc. 1-4 at 95]. Thus, it is clear from Plaintiffs' own allegations that the latest date upon which alleged TILA violations could have occurred is February 5, 2007. Consequently, the Plaintiffs were statutorily precluded from bringing an action for damages arising from TILA violations after February 5, 2008. They were statutorily precluded from bringing an action for rescission arising from TILA violations after February 5, 2010.

The Court finds that the instant action was filed on February 21, 2012, more than two years beyond the expiration of the statute of limitations. The Court finds that the Plaintiff's claims for relief under the TILA are precluded by the applicable statute of limitations. Accordingly, the undersigned will **RECOMMEND** that any claim for relief under TILA be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4. *Real Estate Settlements Procedures Act, 12 U.S.C. § 2601 et seq.*

There are three private causes of action under RESPA. Under RESPA Section 2605, a borrower can sue for a failure to disclose information regarding loan servicing. RESPA Section 2607 provides a cause of action for improper referral kickbacks, and RESPA Section 2608 prohibits a seller from requiring certain title insurance purchases. The Plaintiffs have not in any way insinuated that there were improper kickbacks in the procuring or closing of their loan, nor

11

Case 3:12-cv-00084-TAV-HBG   Document 24   Filed 04/18/12   Page 11 of 15   PageID #: 351

have they referenced any improper title insurance practices in the Complaint, which leaves only the possibility of a claim under RESPA Section 2605.

Section 2605 directs, "Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b). Generally, this notice must be given fifteen days prior to the effective date of the transfer. Pursuant to 12 U.S.C. § 2614, a claim under Section 2605 must be brought within three years of an alleged violation of Section 2605.

In this case, the Plaintiffs have alleged that the servicing of their Note and Deed of Trust have been transferred numerous times. The Plaintiffs allege that the last of these transfers took place in early December 2011. [Doc. 1 at ¶ 67]. The Plaintiffs state that they received written notice of this transfer, [Doc. 1 at ¶ 66], but they then allege that they were informed of the transfer through a phone conversation with a customer service representative for Bank of America, [Doc. 1 at ¶ 67].

The Defendants appear to ignore this allegation of an improper servicing transfer. Instead, the Defendants Bank of America, Mellon, and MERS focus upon the Plaintiffs' references to earlier transfers of service, *e.g.* Doc. 1 at 53], which Bank of America, Mellon, and MERS maintain were properly executed, [Doc. 18 at 10]. Bank of America, Mellon, and MERS urge the Court to calculate application of the statute of limitations from the date of this alleged transfer in 2007.

The Court finds that this transfer of service in December 2011 would survive the Defendants' contention that it is barred by the statute of limitations, because it occurred within three years of the filing of the Complaint in this case. However, the Plaintiffs concede that they received written notice of this transfer of service, [Doc. 1 at ¶ 66], and therefore, the Plaintiffs

12

have failed to state a claim under Section 2605. The Plaintiffs have conceded that Bank of America gave notice of this transfer of service, as required by Section 2605, and they have not demonstrated any other facts that would make this transfer a violation of Section 2605. The Plaintiffs' allegations, even taken in the light most favorable to the Plaintiffs, cannot support finding a violation of Section 2605.

The Court finds that Defendant Rubin Lublin's request that the RESPA claim against it be dismissed is also well-taken. Rubin Lublin argues that Rubin Lublin was never a servicer of their loan, and therefore, they have not shown that Rubin Lublin is subject to Section 2605's requirement that, "Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b). The Court finds that the Plaintiffs' pleadings, even taken in the light most favorable to the Plaintiffs, do not state a claim upon which relief can be granted, and moreover, the Plaintiffs' pleadings do not state facts demonstrating that Rubin Lublin is or was a servicer of the Plaintiff's mortgage loan.

Accordingly, the undersigned will recommend that the Plaintiffs' RESPA claim be **DISMISSED**.

B.  **Motion for a Temporary Injunction**

Also pending before the undersigned is Plaintiffs' "Motion for a Temporary Injunction that the Above Defendants, Specifically Rubin Lublin Suarez Serrano, LLC, Cease and Desist Any Further Action Related to the Property, Loan or Mortgage of the Plaintiffs," [Doc. 2]. In this motion, the Plaintiffs "petition the court to grant a temporary injunction restraining the defendants, specifically Rubin Lublin Suarez Serrano, LLC (RLSS) for proceeding with scheduled foreclosure sale." [Doc. 2 at 1].

The Court would first note that on March 15, 2012, all of the Defendants jointly filed a Notice Regarding Foreclosure Sale stating that the previously-scheduled foreclosure sale was cancelled and that the Defendants would delay the foreclosure sale pending ruling on the Motion for Temporary Injunction. Thus, the Plaintiffs have effectively received a temporary injunction against foreclosure for a period of at least thirty days.

"A district court must balance four factors when considering a motion for a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." Bays v. City of Fairborn, 668 F.3d 814, 818-19 (6th Cir. 2012) (quoting Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)).

The Court has considered the Plaintiffs' Motion for Temporary Injunction and finds that it is not well-taken. The Court finds that the Plaintiffs do not have a strong likelihood of success on the merits because the Court has recommended dismissal of all claims against Rubin Lublin, the party who the Plaintiffs seek to enjoin. Moreover, the injunction would harm the persons holding the Note on which the Plaintiffs have refused to make payments, especially since the Plaintiffs have not demonstrated the ability to post any bond in relation to this request for relief.

The Plaintiffs have not shown any public interest that would be served by the issuance of the injunction, and as the Honorable Curtis Collier, Chief Judge of the District Court for the Eastern District of Tennessee, has noted, while the public has an interest in preventing violations of laws pertaining to foreclosure, the public also has an interest in seeing that loans are repaid. Moulds v. Bank of New York Mellon, 2011 WL 4344439, at *7 (E.D. Tenn. Sept. 14, 2011). In

this case, the undersigned has found that the allegations of wrongdoing against Rubin Lublin should be dismissed, and thus, the public interest would weigh in favor of the parties proceeding toward foreclosure, absent a repayment of the loan.

Accordingly, the undersigned finds that the Motion for Temporary Injunction is not well-taken, and the undersigned will **RECOMMEND** that it be **DENIED**.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that:

1. The Plaintiffs' Motion for Temporary Injunction **[Doc. 2]** be **DENIED**;

2. Defendant Rubin Lublin Suarez Serrano, LLC's Motion to Dismiss Plaintiffs' Complaint **[Doc. 8]** be **GRANTED** and all claims against Rubin Lublin Suarez and Serrano, LLC, be **DISMISSED**; and

3. The Motion to Dismiss filed by Defendants Bank of America N.A., Bank of New York Mellon, and Mortgage Electronic Registration System, Inc. **[Doc. 17] GRANTED**, and all claims against Defendants Bank of America N.A., Bank of New York Mellon, and Mortgage Electronic Registration System, Inc. be **DISMISSED**.

Respectfully Submitted,

s/ H. Bruce Guyton
United States Magistrate Judge